IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| PHILIP ELVIN RIEHL | : | VIOLATIONS: |
| | | 18 U.S.C. § 371 (conspiracy to commit securities fraud and wire fraud – 1 count) |
| | : | |
| | | 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b–5 (securities fraud – 1 count) |
| | : | |
| | | 18 U.S.C. § 1343 (wire fraud – 1 count) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |
| | | Notice of forfeiture |

**INFORMATION**

**COUNT ONE**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this Information:

Relevant Persons and Entities

1. Defendant PHILIP ELVIN RIEHL ("RIEHL") was an accountant operating as "Riehl Accounting," with offices in Bethel Township, Berks County, Pennsylvania. As part of his accounting practice, defendant RIEHL provided accounting and tax preparation services, catering primarily to his co-religionists in the Mennonite religious community of eastern and central Pennsylvania.

2. In addition, since approximately the late 1990s, defendant PHILIP ELVIN RIEHL operated an investment program (the "Riehl Investment Program"), whereby investors would send funds to defendant RIEHL in exchange for a promised return of interest. Interest

rates would be fixed or floating and could vary based on the size of the investment, the date of maturity, and the prime rate. Generally, investors were promised rates of return of about 4½% or 5%. Defendant RIEHL and the Riehl Investment Program would use invested funds to make loans to borrowers. Interest on the loans to borrowers would then purportedly be used to provide the rate of return to investors.

3. Investors in the Riehl Investment Program were generally members of the Mennonite or Amish religious communities who desired a safe and secure investment for their moneys, operated within their community and in a manner consistent with their religious principles. By late 2018, there were hundreds of investors in the Riehl Investment Program, located in Pennsylvania, in other states, and outside the United States.

4. Trickling Springs Creamery, LLC ("Trickling Springs Creamery") was a Pennsylvania limited liability company with its principal place of business in Guilford Township, Franklin County, Pennsylvania. Trickling Springs Creamery was in the business of manufacturing dairy products, including organic and non-GMO milk, which was then sold from its retail locations in Pennsylvania and the District of Columbia. By at least 2017, defendant PHILIP ELVIN RIEHL was the majority member of Trickling Springs Creamery, with a 64½% ownership stake. The remaining 35½% was owned by Person #1, Person #2, and Person #3, who owned 2½%, 15%, and 18%, respectively. In September 2019, Trickling Springs Creamery announced that it was closing its operations, and, in December 2019, it filed a voluntary bankruptcy petition.

5. The Securities and Exchange Commission ("SEC") was an independent agency of the United States government charged by law with preserving honest and efficient markets in securities, and the federal securities laws, regulations, and rules were designed to

ensure that the financial information relating to companies and their securities was accurately disclosed to the investing public.

The Conspiracy

6. From at least in or about January 2010, through at least in or about September 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

**PHILIP ELVIN RIEHL**

and Person #1, known to the United States Attorney, together and with others unknown to the United States, conspired to commit offenses against the United States, namely:

>(a) securities fraud, that is, unlawfully, willfully, and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sale of a security, to use and to employ manipulative and deceptive devices and contrivances by: (i) employing devices, schemes, and artifices to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b–5; and

3

(b) wire fraud, that is, knowingly and with the intent to defraud, to devise, and to intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and to cause to be transmitted wire communications in interstate and foreign commerce, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Purposes of the Conspiracy

7. The purposes of the conspiracy were to (a) enrich defendant PHILIP ELVIN RIEHL and his co-conspirators through the sale of promissory notes for the Riehl Investment Program and Trickling Springs Creamery to victim-investors located in the United States and elsewhere, including in the Eastern District of Pennsylvania; (b) conceal from victim-investors the true financial condition of the Riehl Investment Program and Trickling Springs Creamery; and (c) conceal from victim-investors the manner in which defendant RIEHL and his co-conspirators were using investor proceeds.

Manner and Means

It was part of the conspiracy that:

8. Defendant PHILIP ELVIN RIEHL operated the Riehl Investment Program, which took in investments from investors, such investments taking the form of promissory notes. Investors were promised a rate of return, with either a fixed or floating interest rate. Defendant RIEHL told investors that invested funds would be used to make loans to other persons, who would pay interest on those loans.

9. Defendant PHILIP ELVIN RIEHL made material misrepresentations about the safety and security of investments in the Riehl Investment Program and the performance of the Riehl Investment Program. Among other things:

(a) Defendant PHILIP ELVIN RIEHL told investors and prospective investors that the Riehl Investment Program's portfolio of loans was diversified, such that loans were not concentrated in any one industry. In reality, up to approximately forty percent of outstanding loans were to Trickling Springs Creamery, a business of which defendant RIEHL was the majority owner.

(b) Defendant PHILIP ELVIN RIEHL told investors and prospective investors that he required two co-signers for each loan, thereby reducing the risk of investing. In fact, not all of the Riehl Investment Program's loans were so secured.

(c) Defendant PHILIP ELVIN RIEHL told investors and prospective investors that the Riehl Investment Program was profitable, when, in reality, it was plagued by defaults and uncollectible debts.

10. Defendant PHILIP ELVIN RIEHL issued periodic "Investment Account Statements" that purported to show interest earned by investors and the current values of investments, even though he knew that he lacked sufficient funds to repay these investors and would need to obtain new investments to repay the existing investors.

11. On September 22, 2016, defendant PHILIP ELVIN RIEHL testified, under penalties of perjury, before officers of the SEC in Philadelphia, Pennsylvania (the "SEC Testimony"). During the SEC Testimony, defendant RIEHL sought to impede the SEC staff's investigation and testified that, although the Riehl Investment Program was short of funds, he was not taking new investments, was in the process of winding down the Riehl Investment Program, and always required two co-signers for loans made from the Riehl Investment Program, when these statements were, in fact, not true.

12. Contrary to what he testified to during his SEC Testimony, defendant PHILIP ELVIN RIEHL continued to solicit and to accept investments into the Riehl Investment Program after September 22, 2016, and until late 2018.

13. By June 2018, there was over $51 million in principal and accrued interest owed to investors in the Riehl Investment Program. Despite this, during 2018 defendant PHILIP ELVIN RIEHL solicited purported short term loans from investors, even though he knew that he and the Riehl Investment Program lacked the ability to repay them.

14. Defendant PHILIP ELVIN RIEHL used investor money in the Riehl Investment Program to make payments to himself, Trickling Springs Creamery, and prior investors.

15. Defendant PHILIP ELVIN RIEHL and Person #1 solicited investments in Trickling Springs Creamery, which took the form of promissory notes, with Trickling Springs Creamery promising rates of return of about 4½% or 5%.

16. Defendant PHILIP ELVIN RIEHL and Person #1 prepared and furnished to investors offering materials for investments in Trickling Springs Creamery, which contained materially false or misleading statements about Trickling Springs Creamery, including about

large contractual arrangements it purportedly had, which it either did not have or which were exaggerated or misleading.

17. Defendant PHILIP ELVIN RIEHL portrayed Trickling Springs Creamery as a successful business worth about $20 million to $40 million, when, in reality, it was losing money and was being propped up by investor funds and transfers of moneys from the Riehl Investment Program. Defendant RIEHL and his co-conspirators failed to fully disclose to investors the dire financial condition of Trickling Springs Creamery.

18. By June 2018, there was about $12 million in principal and accrued interest owed to investors in Trickling Springs Creamery. In addition, Trickling Springs Creamery owed the Riehl Investment Program about $22 million.

19. As of December 2019, there was a total of about $59,688,297.97 that was invested by investors in the Riehl Investment Program and Trickling Springs Creamery that has not been repaid to those investors (which amount does not include accrued interest).

Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendant PHILIP ELVIN RIEHL, Person #1, and others unknown to the United States committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On or about January 30, 2017, Trickling Springs Creamery accepted an investment of about $3,600 from K.R., based on a materially false and misleading offering document attributed to defendant PHILIP ELVIN RIEHL, Person #1, Person #2, and Person #3.

2. On or about April 13, 2018, defendant PHILIP ELVIN RIEHL sent a facsimile transmission to J.B., in Iowa City, Iowa, enclosing instructions for a wire transfer to one of defendant RIEHL's bank accounts, to facilitate an investment by J.B. in the Riehl Investment Program.

3. On or about June 30, 2018, defendant PHILIP ELVIN RIEHL sent C.Z. an "Investment Account Statement" for C.Z.'s investment in the Riehl Investment Program.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1–5 and 8–19 and the Overt Acts of Count One of this Information are realleged and incorporated by reference as though fully set forth herein.

2. From at least in or about January 2010, through at least in or about September 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

**PHILIP ELVIN RIEHL**

did unlawfully, willfully, and knowingly, directly and indirectly, and by aiding and abetting, by use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sale of a security, use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b–5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b–5, and Title 18, United States Code, Section 2.

# COUNT THREE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1–5 and the Overt Acts of Count One of this Information are realleged and incorporated by reference as though fully set forth herein.

## The Scheme and Artifice to Defraud

2. The United States realleges by reference Paragraph 7 of Count One of this Information as a description of the purposes of the scheme.

3. The United States realleges by reference Paragraphs 8–19 of Count One of this Information as a description of the scheme.

4. From at least in or about January 2010 through at least in or about September 2019, defendant

**PHILIP ELVIN RIEHL**

devised and intended to devise a scheme to defraud investors in the Riehl Investment Program and Trickling Springs Creamery and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

## Use of Wires

5. On or about April 13, 2018, in the Eastern District of Pennsylvania and elsewhere, defendant

**PHILIP ELVIN RIEHL**

for the purpose of executing the scheme described above caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, to wit, an interstate facsimile transmission from defendant RIEHL (in the Eastern District of Pennsylvania) to J.B. (in the State of Iowa).

All in violation of Title 18, United States Code, Section 1343.

# NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 371 and 1343, and Title 15, United States Code, Sections 78j(b) and 78ff, defendant

**PHILIP ELVIN RIEHL**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of at least $59,688,297.97.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third-party;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

*Denise Wolf for*
**WILLIAM M. McSWAIN**
**United States Attorney**